UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GOOD SPORTS DAYTONA, INC., a Florida
corporation, GOOD SPORTS, INC., a
Connecticut corporation, and DAYTONA
REGIONAL CHAMBER OF COMMERCE,
INC., a Florida non-profit corporation,

        CASE NO. 6:11-CV-00233-MSS-DAB

        Plaintiffs,

v.

CONSOLIDATED DISTRIBUTORS, INC.
a/k/a JOE COOL, INC., a New York
corporation, JOE COOL, INC., a Florida
corporation, and METTEMP, INC., a New
York corporation,

        Defendants.

---

### PLAINTIFF/COUNTER-DEFENDANT'S, DAYTONA REGIONAL CHAMBER OF COMMERCE, ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT/COUNTER-PLAINTIFF'S, JOE COOL, INC., COUNTERCLAIM

Plaintiff/Counter-Defendant, DAYTONA REGIONAL CHAMBER OF COMMERCE (hereinafter the "CHAMBER"), files its Answer and Affirmative Defenses to the Counterclaim of Defendant/Counter-Plaintiff, JOE COOL, INC., a Florida corporation (hereinafter "JOE COOL").[1]

### THE PARTIES

1.      Plaintiff, JOE COOL, INC., is a Florida corporation residing in and doing business in this District.

**ANSWER: Admitted for jurisdictional purposes only.**

---

[1] This Answer and Affirmative Defenses to the Counterclaim filed by JOE COOL is only on behalf of the CHAMBER as it appears that JOE COOL is not seeking relief from GOOD SPORTS DAYTONA, INC. or GOOD SPORTS, INC. Further, though the Counterclaim purports to sue Larry McKinney individually, personal jurisdiction has not been obtained over Mr. McKinney.

2.      This Court has jurisdiction of Plaintiffs/Counter-Defendants by virtue of their status as Plaintiffs. Chamber is a Florida non-profit corporation with an office address of 126 East Orange Avenue, Daytona Beach, Florida 32114.

**ANSWER: Admitted for jurisdictional purposes only.**

3.      Upon information and belief, Defendant, McKinney is a Florida domiciliary with a business address of 126 East Orange Avenue, Daytona Beach, Florida 32114.

**ANSWER: Admitted for jurisdictional purposes only.**

4.      Upon information and belief, McKinney is responsible for the day-to-day activities of Plaintiff Daytona Beach Regional Chamber of Commerce, including the actions of Chambers [sic] complained of herein, and has taken personal action in an effort to destroy Counter-Plaintiff's business contracts and reputation.

**ANSWER: Admitted that McKinney is the President of the CHAMBER. All remaining allegations are denied.**

## JURISDICTION AND VENUE

5.      This is an action for unfair competition, and a declaratory judgment of non-infringement of trademark, under the Lanham Act, and tortious interference with business contract under Florida state law. Subject matter jurisdiction arises under 28 U.S.C. § 1331, 1332 and 1338.

**ANSWER: Admitted that subject matter jurisdiction arises under 28 U.S.C. § 1331 and 1338. All remaining allegations are denied.**

6.      This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

**ANSWER: Admitted for jurisdictional purposes only.**

7.      The amount in controversy exceeds $75,000.

**ANSWER: Denied.**

8.      Personal jurisdiction and venue are proper in this Court because Counter-Defendants' tortious conduct has occurred in this District and is harming Plaintiff in this District.

**ANSWER: Admitted that personal jurisdiction and venue are proper in this Court as to the CHAMBER. All remaining allegations are denied.**

9.      At least as early as 1986, Counter-Plaintiff's licensor began selling clothing and, in particular, t-shirts, in the Daytona Beach area through its brick and mortar store.

**ANSWER: The CHAMBER is without knowledge as to the allegations in paragraph 9, therefore, denied.**

10.     At least as early as 1987, Counter-Plaintiff's licensor began using the trademark DAYTONA BEACH BIKE WEEK in connection with the sale of such t-shirts.

**ANSWER: Denied.**

11.     In addition, Counter-Plaintiff's licensor has used the mark DAYTONA BIKE WEEK in connection with marketing of such t-shirts on hang tags as a brand.

**ANSWER: Denied.**

12.     The DAYTONA BEACH BIKE WEEK and the DAYTONA BIKE WEEK trademarks are hereinafter referred to collectively as the "BIKE WEEK Marks."

**ANSWER: Denied.**

13.     In addition to its retailing business, Counter-Plaintiff has also developed a distributor business wherein it offers for sale and sells to other retailers t-shirts under its BIKE WEEK Marks, and has a license agreement with the owners of the BIKE WEEK Marks.

**ANSWER: Denied.**

14.     Having offered and sold t-shirts under its BIKE WEEK Marks for more than 20 years, Counter-Plaintiff and through its licensor, have devoted great effort to maintaining the quality of its products and as a result, has expanded its business and it has acquired substantial goodwill in association with its BIKE WEEK Marks.

**ANSWER: Denied.**

15.     During its period of more than 20 years of continuous use, sales have been substantial, and Counter-Plaintiff has invested and spent substantial sums advertising and promoting its brand under the BIKE WEEK Marks.

**ANSWER: Denied.**

16.     In order to protect its marks, Counter-Plaintiff's licensor METTEMP, INC. obtained Florida State trademark registration (T9000000380) for the mark DAYTONA BEACH BIKE WEEK. (Exhibit A).

**ANSWER: Admitted that METTEMP, INC. obtained a Florida State trademark registration (T9000000380) for the phrase Daytona Beach Bike Week. All remaining allegations are denied.**

17.     Consolidated Distributors, Inc. has applied to federally register the BIKE WEEK Marks in the United States Patent and Trademark Office under U.S. Application Serial Nos. 85/191,787, 85/094,408, and 77/776,138 (the "Application"), all of which are pending. Applications are annexed hereto as Exhibits B, C, and D respectively.

**ANSWER: Admitted that Consolidated Distributors, Inc. has filed applications with the United States Patent and Trademark Office to register certain phrases, which the CHAMBER has opposed. All remaining allegations are denied.**

18.     The "138" Application has been opposed by Chamber, and the opposition is pending before the Trademark Trial and Appeal Board under Opp. No. 91193908.

**ANSWER: Admitted.**

19.     The "908" Opposition is currently in the discovery phase, and the Counter-Defendant Chamber has not yet served any discovery.

**ANSWER: Admitted that neither party in the "908" Opposition has served any discovery, however, the "908" Opposition was suspended by the Trademark Trial and Appeal Board in an order dated March 10, 2011, until this civil action is resolved.**

20.     Upon information and belief, Counter-Defendant, Chamber [sic] and claims to be the "official" manager and organizer since 1988 of the Bike Week event that takes place in Daytona Beach, Florida.

**ANSWER: Admitted.**

21.     Upon information and belief, Counter-Defendant Chamber admits that its position was not ratified until 1995, which is long after Counter-Plaintiff's have first used the BIKE WEEK Marks in commerce.

**ANSWER: Admitted that the CHAMBER's position as official manger and organizer of Bike Week was ratified by the Daytona Beach City Commission by Resolution in 1995. All remaining allegations are denied.**

22.     Counter-Defendant Chamber further claims to be the owner of the BIKE WEEK Marks, including for use on clothing.

**ANSWER: Admitted that the CHAMBER's position is that the phrases Daytona Beach Bike Week and Daytona Bike Week are generic and cannot be owned by any one individual or entity. Further, even if not generic, the phrases Daytona Beach Bike Week and Daytona Bike**

Week were used by many entities, including **GOOD SPORTS, INC.** and **GOOD SPORTS DAYTONA, INC.**, prior to the use of the phrases by **JOE COOL**, or the other defendants in this case, and cannot be the property of **JOE COOL.**

23.     Counter-Defendant Chamber operates a website listing Official Bike Week Daytona Beach Licensees.

**ANSWER: Admitted that the CHAMBER lists the "Official" Bike Week Merchandise Licensees as it licenses the annual event design mark, not the phrases Daytona Beach Bike Week and Daytona Bike Week.**

24.     Upon information and belief, Counter-Defendant Chamber and Defendant McKinney have held meetings to organize local businesses and vendors in Daytona Beach to resist Counter-Plaintiff's continued legitimate use and licensing of its BIKE WEEK Marks.

**ANSWER: Denied.**

25.     Upon information and belief, Counter-Defendant Chamber and Defendant McKinney have indicated that they are considering additional action with respect to Counter-Plaintiffs' conduct through its attorneys and have claimed to have been in contact with local law enforcement about their "lawsuit."

**ANSWER: Denied.**

26.     Counter-Defendant Chamber and Defendant McKinney have published a newsletter specifically attacking Counter-Plaintiff's business by intimidating their customers.

**ANSWER: Denied.**

27.     As a result of the Counter-Defendant Chamber's and Defendant McKinney's actions, Counter-Plaintiff has suffered lost business due to cancelled orders from customers concerned about

the statements made by the Counter-Defendants. At least one customer located in this District cancelled its order for 1000 dozen t-shirts based on the circulation of Counter-Defendants' letter.

**ANSWER: Denied.**

## COUNT I-UNFAIR COMPETITION

28.    Counter-Plaintiff repeats and re-alleges all facts included in paragraphs 1-27.

**ANSWER: The CHAMBER reincorporates its answers to paragraphs 1-27 as if stated in full herein.**

29.    Count I is for Unfair Competition under Section 43(a) of the Lanham Act (as amended), 15 U.S.C. § 1125(a).

**ANSWER: The CHAMBER admits that Count I is for unfair competition pursuant to 15 U.S.C. § 1125(a), but denies that there is any basis in law or fact to support this claim.**

30.    Counter-Defendant Chamber claims superior rights in the BIKE WEEK Marks or marks confusingly similar thereto and/or their designation of official licensees of apparel bearing the BIKE WEEK Marks (or marks confusingly similar thereto) is likely to cause confusion or mistake as to the origin of goods licensed by Defendants as compared to goods originating with and/or licensed by Counter-Plaintiff.

**ANSWER: Denied.**

31.    Counter-Defendant Chamber is using the mark in commerce and is offering to license the right to use it to others.

**ANSWER: Admitted that the CHAMBER lists the "Official" Bike Week Merchandise Licensees as it licenses the annual event design mark, not the phrases Daytona Beach Bike Week and Daytona Bike Week. All remaining allegations are denied.**

32.     Counter-Defendant Chamber and Defendant McKinney's misrepresentation as to ownership of the BIKE WEEK Marks and the official licensees thereof are likely to cause damage to Counter-Plaintiff.

**ANSWER: Denied.**

33.     As a direct result of Counter-Defendant Chamber and McKinney's conduct, Counter-Plaintiff has suffered irreparable injury to its reputation and goodwill.

**ANSWER: Denied.**

34.     By reason of the foregoing, Counter-Plaintiff is being damaged by Counter-Defendants' activities in the manner set forth above, and shall continue to be damaged unless Counter-Defendants are preliminarily and permanently enjoined from the commission of said acts. Counter-Plaintiff has been and shall continue to be irreparably injured by the continuing aforementioned acts of Counter-Defendants, unless they are enjoined from continuing to commit such acts.

**ANSWER: Denied.**

35.     Counter-Plaintiff has no adequate remedy at law.

**ANSWER: Denied.**

## COUNT II-DECLARATORY JUDGMENT OF TRADEMARK RIGHTS

36.     Count II is for declaratory judgment seeking a clarification of the rights of Counter-Plaintiff in the BIKE WEEK Marks (or marks similar thereto).

**ANSWER:  The CHAMBER admits that Count II is for declaratory judgment, but denies that there is any basis in law or fact to support this claim.**

37.     Counter-Plaintiff repeats, re-alleges and incorporates by reference to the allegations of paragraphs 1 through 35 of this Counter-Complaint as though set forth fully here.

**ANSWER: The CHAMBER reincorporates its answers in paragraphs 1 through 35 as if fully stated herein.**

38.     Counter-Plaintiff has superior rights in the BIKE WEEK Marks by virtue of its use of the BIKE WEEK Marks.

**ANSWER: Denied.**

39.     Counter-Defendant Chamber and Defendant McKinney have taken action against Counter-Plaintiff's right to exclusive use of the BIKE WEEK Marks, and have threatened and taken legal action against Counter-Plaintiff to prevent it from continuing its use of the BIKE WEEK Marks while causing harassment and interference in the market place.

**ANSWER: The CHAMBER admits that it commenced this civil action against JOE COOL. All remaining allegations are denied.**

40.     Counter-Plaintiff has no adequate remedy at law.

**ANSWER: Denied.**

**COUNT III-TORTIOUS INTERFERENCE WITH CONTRACT**

41.     Counter-Plaintiff repeats, re-alleges and incorporates by reference the allegations of paragraphs 1 through 40 of this Complaint as though set forth fully here.

**ANSWER: The Chamber reincorporates its answers to paragraphs 1 through 40 as if fully stated herein.**

42.     Upon information and belief, Counter-Defendant Chamber and Defendant McKinney were aware of contracts between Counter-Plaintiff and its customers for purchase of t-shirts bearing the BIKE WEEK Marks.

**ANSWER: Denied.**

43.     Upon information and belief, Counter-Defendant Chamber and Defendant McKinney deliberately engaged in a pattern of conduct to intentionally induce Counter-Plaintiff's customers to cancel their contracts or otherwise render Counter-Plaintiff's performance impossible.

**ANSWER: Denied.**

44.     Counter-Defendant Chamber's and McKinney's conduct has in fact resulted in the loss of business, and it was their intention to destroy Counter-Plaintiff's business reputation by wrongfully clouding Counter-Plaintiff's right to the peaceful use of its marks, resulting in the loss of contractual benefits.

**ANSWER: Denied.**

45.     The foregoing acts of Counter-Defendants are willful and malicious.

**ANSWER: Denied.**

46.     Counter-Defendant Chamber and Defendant McKinney knew of the existence of certain contracts and induced the non-conformance of those contracts while continuing to soil the reputation of Counter-Plaintiff, and causing the consuming community to break its contractual relations with Counter-Plaintiff.

**ANSWER: Denied.**

47.     As an actual and proximate result of the aforesaid acts, Counter-Plaintiff has suffered damages estimated to be in the millions of dollars. Defendant McKinney is personally liable for the damages complained of.

**ANSWER: Denied.**

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Counterclaim fails to state a cause of action for unfair competition under the Lanham Act.

### Second Affirmative Defense

JOE COOL has consented to the use of the phrases Daytona Beach Bike Week and Daytona Bike Week by members of the CHAMBER and the community at large.

### Third Affirmative Defense

JOE COOL inexcusably delayed the bringing of this action against the CHAMBER for unfair competition as it has known of the use of the phrases Daytona Beach Bike Week and Daytona Bike Week by members of the CHAMBER, and the community at large, for over twenty years, and the CHAMBER and its members are prejudiced by the delay of JOE COOL in bringing this action.

### Fourth Affirmative Defense

JOE COOL has unclean hands in that it has knowledge that the Florida State trademark registration (T9000000380), for the phrase Daytona Beach Bike Week, was obtained through fraud.

### Fifth Affirmative Defense

Florida State trademark registration (T9000000380) was obtained through fraud.

### Sixth Affirmative Defense

The phrases Daytona Beach Bike Week and Daytona Bike Week are generic, and therefore, protection is not available.

### Seventh Affirmative Defense

Count II fails to state a claim for which relief can be granted.

### Eighth Affirmative Defense

JOE COOL has an adequate remedy at law.

### Ninth Affirmative Defense

Count III fails to state a claim for which relief can be granted.

### Tenth Affirmative Defense

The CHAMBER does not have knowledge of the alleged contracts between JOE COOL and its customers.

### Eleventh Affirmative Defense

The CHAMBER did not intentionally and unjustifiably interfere with the alleged contracts between JOE COOL and its customers.

### Twelfth Affirmative Defense

The CHAMBER was privileged or justified in its conduct.

### Thirteenth Affirmative Defense

The CHAMBER acted to protect its own, and its members', economic and financial interest.



By:  /s/ Heather Bond Vargas
HEATHER BOND VARGAS
FLA. BAR NO. 230900
KELLY PARSONS KWIATEK
FLA. BAR NO. 0860611
150 Magnolia Avenue
Post Office Box 2491
Daytona Beach, FL 32115-2491
Telephone: (386) 323-9220
Facsimile: (386) 944-7964
Heather.Vargas@CobbCole.com
Kelly.Kwiatek@CobbCole.com
ATTORNEYS FOR THE PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing has been filed this 24th day of March, 2011,

with the CM/ECF system, which will send an automatic notification and copy to the following:

Louis R. Gigliotti, Esq.
Alcoba & Associates, P.A.
3399 NW 72nd Avenue, Suite 211
Miami, FL 33122
Email: lgigliotti@bellsouth.net


/s/ Heather Bond Vargas
Attorney