UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**GOOD SPORTS DAYTONA , INC.**, a
Florida corporation, **GOOD SPORTS,
INC.**, a Connecticut corporation and
**DAYTONA REGIONAL CHAMBERS
OF COMMERCE, INC.**, a Florida
non-profit corporation,

    Plaintiffs,

v.                                         Case No.: 6:11-cv-233-ORL-35-DAB

**CONSOLIDATED DISTRIBUTORS,
INC.** a/k/a **JOE COOL, INC.**, a New
York corporation, **JOE COOL, INC.**,
a Florida corporation, and **METTEMP,
INC.**, a New York corporation,

    **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court for consideration of Plaintiffs' Motion for Entry of Final Default Judgment against Defendants Consolidated Distributors, Inc a/k/a Joe Cool, Inc., a New York Corporation ("Defendant Consolidated") and Mettemp, Inc., a New York Corporation ("Defendant Mettemp"). (Dkt. 36)  Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Plaintiffs' Motion for Entry of Final Default Judgment (Dkt. 36), as described herein.

**I.   BACKGROUND**

On February 11, 2011, Plaintiffs filed their Complaint in this case, seeking a declaration that the phrase "Daytona Beach Bike Week" does not function as a valid

trademark pursuant to 15 U.S.C. § 1125 and 28 U.S.C. § 2210 (Count I) and cancellation of trademark registration pursuant to FLA. STAT. § 495.101 (Counts II, III and IV). (Dkt. 1 at 4-8) Plaintiffs made several unsuccessful attempts to serve Defendants Consolidated and Mettemp. (See Dkts. 10, 11, 28, 28-1, 29, 29-1) As noted by this Court in its Order granting Plaintiff's Motion for Entry of Clerk's Default Against Defendants:

> As shown by the affidavits that Plaintiffs have submitted, Plaintiffs have diligently searched for the Defendants. Plaintiffs have complied with [FLA. STAT.] § 48.161, the substitute service statute on nonresidents, by having the Secretary of State accept service on behalf of Consolidated and Mettemp; sending copies of the acceptance and copies of the process, including the Complaint, to every known address for the Defendants, and by filing an affidavit of compliance, attaching the certified mail envelopes showing that the certified mail was undeliverable. Though the return receipts were not filed, as the certified mail could not be delivered, where the nonresident defendant doing business in the state fails to file a correct address for the purposes of substituted service, plaintiff's attempt to effect service at the address furnished by the defendant is valid.

(Dkt. 31 at 4-5) (internal citation and quotation marks omitted)  On July 6, 2011, the Clerk entered default against Defendants Consolidated and Mettemp. (Dkt. 32)

## II.    FACTS

Based on the Complaint (Dkt. 1) and Plaintiffs' Motion (Dkt. 36), the Court finds as follows:

1. Plaintiffs are suing Defendants to invalidate their putative trademarking and enforcement of the phrase "Daytona Beach Bike Week," which Plaintiffs contend is generic and has been in use for the last seventy years.

2. This Court has jurisdiction over Plaintiffs and Defendants and has subject matter jurisdiction over this action.

3. Bike Week is an annual event that has been held in Daytona Beach, Florida since 1939. Hundreds of thousands of motorcycle enthusiasts congregate in Daytona Beach to ride, admire other motorcycles, and enjoy the Daytona Beach area.

4. Plaintiff Daytona Regional Chamber of Commerce (the "Chamber") has been the official manager and organizer of Bike Week since 1988, which was memorialized and ratified by the Daytona Beach City Commission by Resolution in 1995. The Chamber is the only entity with the authority to designate sponsors as "Official" Daytona Beach Bike Week sponsors (e.g. "Official Beer of Daytona Beach Bike Week"), and it has the exclusive right to license the official logo to vendors.

5. On April 14, 2009, Defendant Mettemp filed and obtained trademark No. T09000000380 from the State of Florida for use of the phrase "Daytona Beach Bike Week" in association with "clothing, shirts, and t-shirts," claiming first use on December 31, 1987, and claiming that "no other person . . . has the right to use such mark in Florida."

6. Plaintiffs used the phrase "Daytona Beach Bike Week" before the date claimed by Mettemp. At the time of Mettemp's application, Plaintiff Good Sports, Inc. had been using the phrase "Daytona Beach Bike Week" in association with clothing, namely t-shirts, shirts, caps, tops, bottoms, and jackets in the United States since 1983, when the company was first organized. Plaintiff Good Sports Daytona, Inc. had been selling such clothing since 2001.

7. On July 10, 2009, Defendant Consolidated filed Its Intent to Use Application No. 77/776,138 with the United States Patent and Trademark Office for use

of "Daytona Beach Bike Week" in association with "clothing, namely t-shirts, shirts, caps, tops, and bottoms." The Chamber opposed the application.

8. Since Bike Week's inception, innumerable vendors have sold products, including all manner of clothing, bearing the words "Daytona Beach Bike Week."

9. Consumers do not associate the phrase "Daytona Beach Bike Week" with any one source.

10. Defendants Consolidated and Mettemp have sent numerous letters to clothing vendors that use the phrase "Daytona Beach Bike Week," threatening that the use of the phrase is a violation of the Lanham Act and state law and constitutes infringement and counterfeiting of their alleged trademark, which they claimed is held by Defendant Mettemp and licensed to Defendant, Joe Cool, Inc., a Florida corporation.

11. Plaintiffs attempted to serve Defendants Consolidated and Mettemp at the addresses listed on the State of New York's Division of Corporations website. (Dkt. 28-1) The process server was unable to locate Consolidated or Mettemp at the addresses provided by Defendants to the New York Division of Corporations. Returns of Non-Service were filed with the Court on March 10, 2011. (Dkt. 10; Dkt. 11)

12. Defendants Consolidated and Mettemp operate, conduct, and engage in business in the State of Florida without having registered with the State of Florida Division of Corporations. On March 21, 2011, Plaintiffs served Defendants Consolidated and Mettemp via substituted service on the Florida Secretary of State, pursuant to Florida law. See FLA. STAT. §§ 48.161, 48.181.

13.     Defendants had up to and including April 11, 2011, to file their response to Plaintiffs' Complaint.  To date, Defendants Consolidated and Mettemp have failed to answer or otherwise defend this matter.

## III.     LEGAL STANDARD AND ANALYSIS

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). However, a defendant's default alone does not require the Court to enter a default judgment. DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005).  To enter a judgment, there must be sufficient basis in the pleadings to support the relief sought.  Id.  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).  If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. See Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538, 1543-44 (11th Cir. 1985).  Damages may be awarded only if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. See id. at 1544.

### A. *Cancellation of Trademark – Counts II, III, and IV*

Pursuant to FLA. STAT. § 495.101, the Florida Department of State must cancel any trademark registration, if, inter alia:

[A] court of competent jurisdiction finds that:

>   (a) The registered mark has been abandoned.
>
>   (b) The registrant is not the owner of the mark.
>
>   (c) The registration was granted improperly.
>
>   (d) The registration was obtained fraudulently.
>
>   (e) The mark is or has become the generic name for the goods or services, or a portion thereof, for which the mark has been registered.
>
>   (f) The registered mark is so similar, as to be likely to cause confusion or mistake or to deceive, to a mark registered by another person in the United States Patent and Trademark Office, prior to the date of the filing of the application for registration by the registrant hereunder, and not abandoned; however, should the registrant prove that the registrant is the owner of a concurrent registration of a mark in the United States Patent and Trademark Office covering an area including this state, the registration hereunder shall not be canceled.

FLA. STAT. § 495.101(3)(a)-(f).  Additionally, a registration must be cancelled by the Florida Department of State "when a court of competent jurisdiction . . . order[s] cancellation . . . on any ground." FLA. STAT. § 495.101(4).

Here, there is a sufficient basis for cancellation of Defendant Mettemp's trademark because it was fraudulently obtained or, alternatively, was improperly granted.  At the time of Mettemp's application in April 2009, Plaintiff Good Sports, Inc. had been using the phrase "Daytona Beach Bike Week" in association with clothing and other goods since 1983.  (Dkt. 1 at 4; Dkt. 36 at 6)  Similarly, Plaintiff Daytona Regional Chamber of Commerce had been the official manager, organizer, and only entity with the authority to designate sponsors as "Official" Daytona Beach Bike Week sponsors since 1988.  (Dkt. 1 at 4; Dkt. 36 at 5)  Given these uncontested facts and the more than seventy year history of Daytona Beach Bike Week, from 1939 to present, the Court finds Defendant Mettemp's representation to the Florida Department of State in its trademark registration application that "no other person . . . has the right to use such mark in Florida" is fraudulent.  Therefore, cancellation of the registration is appropriate

6

because it was fraudulently and/or improperly obtained. See FLA. STAT. § 495.101(3)(c),(d). Accordingly, Plaintiffs' request for a Final Default Judgment cancelling State trademark registration No. T09000000380 for the phrase "Daytona Beach Bike Week" is **GRANTED**.

### B. Declaration of Rights Under the Lanham Act and Request for Injucntive Relief – Count I

Pursuant to 15 U.S.C. § 1125(a):

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). A "trademark" includes "any word, name, symbol, or device, or any combination thereof . . . used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Trademark protection is available only to "distinctive" marks, i.e., marks that serve the purpose of identifying the source of goods or services. Welding Servs., Inc. v. Forman, 509 F.3d 1351,1357 (11th Cir. 2007). "Some marks are inherently distinctive; some marks, though not inherently distinctive, acquire distinctiveness by becoming associated

7

in the minds of the public with the products or services offered by the proprietor of the mark; and some marks can never become distinctive." Id.

Trademark law distinguishes four gradations of distinctiveness of marks, in descending order of strength: fanciful or arbitrary, suggestive, descriptive, and generic. Tana v. Dantanna's, 611 F.3d 767, 774 (11th Cir. 2010). A "generic" mark describes the class to which a good belongs and suggests the basic nature of goods or services. Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1188 (11th Cir. 2011). Because generic marks are not distinctive and cannot acquire secondary meaning, they are generally incapable of receiving trademark protection and may never be registered as trademarks under the Lanham Act. Id.; see also 15 U.S.C. §1125(a).

Daytona Beach Bike week has been held in Daytona Beach, Florida for over seventy years. (Dkt. 1 at 3; Dkt. 36 at 5) During that time, innumerable vendors have sold products, including all manner of clothing, bearing the words "Daytona Beach Bike Week." Plaintiff Good Sports, Inc. has been using the phrase "Daytona Beach Bike Week" on clothing, such as t-shirts, shirts, caps, tops, bottoms, and jackets since 1983. (Dkt. 1 at 4; Dkt. 36 at 5) Similarly, Plaintiff Good Sports Daytona, Inc. has been selling such clothing since 2001. (Id.) Since 1988, Plaintiff Daytona Regional Chamber of Commerce has managed and organized Bike week and maintains the exclusive right to license the official logo to vendors. (Id.) Because the phrase "Daytona Beach Bike Week" has been used by so many different entities over the past few decades, consumers do not associate the term or phrase with any one source and no one entity has had any control over the use of the phrase "Daytona Beach Bike Week" or the quality of the products on which the phrase was applied. (See id.) Therefore, the Court

8

finds that the phrase "Daytona Beach Bike Week" and its functional equivalents are generic and cannot receive trademark protection. See Knights Armament, 654 F.3d 1179, 1188; see also 15 U.S.C. §1125(a). Accordingly, Plaintiffs are entitled to a Final Default Judgment declaring that the phrase "Daytona Beach Bike Week" does not function as a trademark and is generic.

Plaintiffs are also entitled to an Order enjoining Defendants from threatening clothing vendors with letters stating that use of the phrase "Daytona Beach Bike Week" violates the Lanham Act and state law and constitutes infringement and counterfeiting of Defendants' purported trademark. Section 1116(a) provides that the Court:

> [S]hall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of § 1125 of this title. Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.

15 U.S.C. § 1116(a). Under the statute, a plaintiff is entitled to permanent injunctive relief if the plaintiff succeeds on the merits of his claims and if the equities involved favor injunctive relief. Defendants Consolidated and Mettempt have made false allegations of trademark infringement with the intent to interfere wrongfully with, disrupt, and injure the business operations of Plaintiffs and other vendors in Florida by harassing vendors for royalty payments earned in the distribution of t-shirts and other clothing bearing the phrase "Daytona Beach Bike Week." In this case, Plaintiffs assert and the Court agrees that this harassing and threatening conduct would likely continue in the absence of a permanent injunction. (Dkt. 36 at 7-8)

Accordingly, pursuant to Plaintiffs' request, it is hereby **ORDERED** that:

A Permanent Injunction is entered as to Defendants Consolidated Distributors, Inc a/k/a Joe Cool, Inc., a New York Corporation, and Mettemp, Inc., enjoining the Defendants, their agents, servants, employees, officers, directors, subsidiaries, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise:

(a) From further asserting, contending, claiming, or alleging ownership, infringement, and/or dilution of the "Daytona Beach Bike Week" phrase; and

(b) From further harassment of Plaintiffs and other vendors via letter or otherwise.

**It is further ORDERED that**:

Plaintiffs' continued right to use the phrase "Daytona Beach Bike Week" shall be free and clear of interference or harassment without any obligation or liability to Defendants Consolidated Distributors, Inc a/k/a Joe Cool, Inc., a New York Corporation, and Mettemp, Inc.

**It is further ORDERED that**:

This Court shall retain jurisdiction of this action for purposes of enforcing the provisions of the Permanent Injunction by way of contempt or otherwise.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

(1) Plaintiffs' Motion for Entry of Final Default Judgment against Defendants Consolidated Distributors, Inc. a/k/a Joe Cool, Inc., a New York Corporation, and Mettemp, Inc. (Dkt. 36) is **GRANTED** as to all Counts and judgment is entered in

favor of Plaintiffs upon the Complaint herein;

(2) Plaintiffs' request for a permanent injunction is **GRANTED** as described herein;

(3) Pursuant to FLA. STAT. § 495.101, State of Florida trademark registration, No. T09000000380, for the phrase "Daytona Beach Bike Week" is hereby **CANCELLED**; and,

(4) The **CLERK** is directed to **ENTER JUDGMENT** consistent with this Order and **TERMINATE** all pending motions.

**DONE** and **ORDERED** in Orlando, Florida, this 19th day of December 2011.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

Copies Furnished to:
All Counsel of Record
Any Unrepresented Party